Francisco Claudio Camacho por sí y en Representación de su hija menor Blanca Iris Claudio, demandantes y recurridos, *v.* Juan Casillas Mojica y Carmen Casillas Mojica, demandados y recurrentes.

*Número*: R-65-260      *Resuelto*: 31 de mayo de 1972

*Correa Suárez & González Correa,* abogados de la recurrente Carmen Casillas Mojica; *Peñagarícano & Lluberas,* abogados de los recurridos.

El Juez Asociado Señor Pérez Pimentel emitió la opinión del Tribunal.

Francisco Claudio Camacho por sí y en representación de su hija menor Blanca Iris Claudio interpuso demanda contra Juan Casillas Mojica, en reclamación de daños y perjuicios que alegan sufrieron con motivo de un accidente ocurrídole a la menor al ceder y romperse una tabla podrida del piso de la residencia que ocupaban como arrendatarios.

Posteriormente los demandantes radicaron una demanda enmendada adicionando como parte demandada a Carmen Casillas Mojica, aquí recurrente, como dueña o condueña de la casa arrendada a los demandantes. Esta demanda enmen-

dada se notificó al abogado del codemandado Juan Casillas Mojica. La nueva demandada Carmen Casillas Mojica no fue emplazada.

La vista del caso en su fondo se celebró el día 6 de octubre de 1964. El demandado Juan Casillas compareció por medio de su abogado Félix Torres Santiago. Éste hizo constar que no representaba a la codemandada Carmen Casillas. Los demandantes presentaron prueba testifical y documental y solicitaron que como la codemandada Carmen Casillas estaba presente en el salón de la corte y no había contestado la demanda, se anotara su rebeldía. El Tribunal pospuso la decisión sobre este planteamiento para una fecha posterior en que se continuaría la vista del caso para oír el testimonio del Dr. Lebrón, último testigo de los demandantes. Por su parte el codemandado Juan Casillas presentó en esa ocasión, como única prueba, copia certificada de una escritura de compraventa.

En 14 de enero de 1965 se celebró la continuación de la vista del caso, sin la comparecencia de la parte demandada. El tribunal, aceptando como correcto el planteamiento de los demandantes al efecto de que de conformidad con lo dispuesto en Regla 4.8 de Procedimiento Civil, la presencia en corte de la codemandada Carmen Casillas en la primera vista equivalía a su citación y emplazamiento, ordenó se anotara su rebeldía y procedió a escuchar el testimonio del Dr. Lebrón, quedando el caso sometido.

En 20 de enero de 1965 el tribunal dictó sentencia condenando a los demandados Juan Casillas Mojica y Carmen Casillas Mojica a pagar a los demandantes la suma de $3,162.50, más las costas y $350.00 para honorarios de abogado.

En marzo 30 de 1965, la codemandada Carmen Casillas radicó una moción bajo la Regla 49.2 de Procedimiento Civil solicitando se le relevara de los efectos de la sentencia, alegando para ello, falta de jurisdicción sobre su persona e ignorancia, inadvertencia y negligencia excusable. La moción,

suscrita por los abogados Correa Suárez, González Correa y Santos Correa, expresaba en su penúltimo párrafo:

"Esta demandada entiende por todo lo arriba expuesto y por razón de ignorancia, inadvertencia y negligencia excusable se hace necesario que se haga justicia integral, que se le releve por el Honorable Juez, en el ejercicio de su sana discreción judicial, de la sentencia dictada en este caso con fecha 20 de enero de 1965, y que al dejarse sin efecto la misma en cuanto a ella concierne, se le dé una oportunidad razonable para confrontarse a la prueba en su contra y ofrecer prueba de defensa que tiene en abundancia para contrarrestar las alegaciones de la demanda enmendada."

En la vista señalada para la discusión de esta moción, el abogado de los demandantes se allanó a que se relevara a la demandada Carmen Casillas de la sentencia y se reabriera el caso para darle oportunidad de presentar prueba en su defensa. De conformidad con este allanamiento el tribunal dictó una resolución que dispone:

"Visto el allanamiento de la parte demandante el Tribunal declara con lugar la Moción bajo la Regla 49.2 de la codemandada Carmen Casillas Mojica y en su virtud le releva de los efectos de la sentencia dictada en su contra y le concede la oportunidad de contestar la demanda enmendada dentro del término de diez (10) días a partir de la fecha de esta Resolución. Una vez contestada la demanda el Tribunal procederá a señalar fecha para oir a la codemandada Carmen Casillas Mojica en defensa de sus derechos."

La referida codemandada contestó la demanda enmendada negando todos sus hechos esenciales y alegando la defensa especial de falta de exposición de una causa de acción en su contra.

Después de varios incidentes procesales, inmateriales a los fines de la cuestión a resolver, se señaló la vista del caso para el día 3 de noviembre de 1965. Sin embargo, tanto el abogado de los demandantes como el juez que presidía entendieron que el caso se había abierto con el fin limitado de que la

demandada pudiera demostrar con nueva prueba, que el tribunal había dictado la sentencia basándose en prueba fraudulenta, esto es, que el accidente sufrido por la menor había ocurrido en otro sitio distinto y no en la casa donde residían. Así se desprende del récord. Veamos algunos incidentes ocurridos durante la vista:

"HON. JUEZ:

Yo creía era que el accidente no había sido como relataron los padres, pero no que íbamos a ver el caso de nuevo.

LIC. PEÑAGARÍCANO:

Cuando este caso, cuando el compañero Joaquín Correa Suárez radicó una moción para dejar sin efecto la sentencia en cuanto a Carmen Casillas hubo una reunión previa donde se discutió que el compañero tenía prueba que la lesión no había ocurrido en la casa de los demandantes.

HON. JUEZ:

Yo creía que era a eso y nosotros debemos circunscribirnos a eso. Yo no voy a abrir el caso para verlo de nuevo. Si la demandada no está de acuerdo con la opinión tenía su oportunidad de llevar el caso ante un Tribunal Superior, si no lo hizo, ahora no le voy a permitir que abra el caso para presentarnos la misma prueba. Así que yo quiero que diga que el accidente no ocurrió tal como ellos lo relataron.

LIC. CORREA SUÁREZ:

Entendíamos que eso era parte de su prueba.

HON. JUEZ:

No, estamos entrando otra vez en el caso en su fondo y yo tendría que . . . los litigios no se terminarían nunca.

LIC. CORREA SUÁREZ:

Nada más con la testigo.

HON. JUEZ:

Puede retirarse. [Transcripción de la vista celebrada en 3· de noviembre de 1965, págs. 12 y 13.]

.      .      .      .      .      .      .      .

LIC. PEÑAGARÍCANO:

Nos oponemos a esa prueba por los mismos términos de Vustro [*sic*] Honor en el sentido de que para hoy se había citado,

el caso exclusivamente para oír una alegada prueba de fraude, que el accidente no había ocurrido en la casa de Carmen Casillas y sí en otro sitio.

HON. JUEZ:

Vamos a ver si aquí aparece la fecha en que fue tomada del mismo récord, si aparece.

LIC. CORREA SUÁREZ:

Yo quiero saber cómo podría establecer una situación de esa naturaleza, si no es atando todos los cabos.

LIC. PEÑAGARÍCANO:

Con la Venia del Tribunal, con el gran respeto que le tengo al compañero Correa Suárez, cuando fuimos ante Vuestro Honor solicitando la reapertura del caso para dejar sin efecto la sentencia del caso, el compañero Correa Suárez me mostró una declaración jurada de nombre Ramírez, también la vió Vuestro Honor, en el sentido que el accidente había ocurrido en otro sitio y cuando se enteró que había, había un posible fraude, el primero que se allanó fue este abogado.

HON. JUEZ:

Pero no discutamos eso, lo que queremos saber si el accidente no ocurrió como lo demostró la prueba anterior, que se nos demuestre con nueva prueba donde ocurrió el accidente. Ahora, no hay duda ninguna que del récord tiene que aparecer que hubo una inspección ocular y emitieron una orden al demandado de Estabilización Económica que tiene fecha 16 de enero de 1964, debe aparecer del récord.

LIC. CORREA SUÁREZ:

Esa fue, precisamente nosotros entendemos que si había, el piso estaba tan roto que amenazaba, debió habérsele notificado a los anteriores dueños, al dueño, previamente a la fecha en que ocurrió el accidente. Aquí se notifica seis meses después.

HON. JUEZ:

Eso es otra vez volver sobre la misma prueba. Yo quiero prueba nueva evidenciándose que este accidente no ocurrió como se probó aquí. Puede retirarse, señor, muchas gracias. [T.E. págs. 22 a 24, Nov. 3, 1965.]

. . . . . . . . .

P   Usted reparó las tablas?

R   Fue después del accidente porque la Opa lo mandó.

P   Usted le dice a su hermano. . . . No se ponga nerviosa, usted me avisa cuando pueda hablar. La pregunta es sencilla, si usted le dijo a su hermano, Juan Casillas, que reparara las tablas podridas en la casa que ocupaba Francisco Claudio?

R   Sí, llegó una carta de la Opa. Me puede dejar explicar? Nunca he estado en Corte y tengo que ir muy suave porque no sé de letras.

Mire, llegó una carta de la Opa donde decía . . .

HON. JUEZ:

Ya el Tribunal pasó sobre eso. Yo quería la prueba que el accidente no había ocurrido como rezaba la parte demandante.

LIC. PEÑAGARÍCANO:

Eso es todo y no hay más preguntas para la testigo.

HON. JUEZ:

Puede retirarse.

LIC. CORREA SUÁREZ:

Los otros testigos serían de la misma naturaleza. En este caso nosotros estamos tratando de establecer todos los hechos posteriores que revelan que esta cuestión de dar cuenta a la Opa y demás se radican posteriores al hecho de la demanda y que ella reparara inmediatamente, reparara la casa después de la Opa notificarle.

HON. JUEZ:

La moción del compañero donde establece . . .

LIC. PEÑAGARÍCANO:

Sí, Vuestro Honor, es de fecha 30 de marzo, Señor Juez, la moción del compañero Correa Suárez.

HON. JUEZ:

Bueno, donde se expresa que quiere reabrir el caso para presentar prueba.

LIC. PEÑAGARÍCANO:

Sí, como no, es de 30 de marzo de 1965, Señor Juez, jurada por Carmen Casillas Mójica. En lo único que se basa es en la rebeldía y que no estuvo debidamente representada por un abogado.

HON. JUEZ:

Y que permitiera desfilar su prueba.

Lic. Peñagarícano:

Eso lo ha hecho.

Hon. Juez:

Yo creía que se iba a traer prueba demostrando que los hechos que se produjeron ante el Tribunal no eran ciertos y que el Tribunal había dictado una sentencia a base de un fraude cometido por testigos de la parte demandante y como eso era así yo abrí el caso porque, de lo contrario, le estaba dando al demandante [*sic*] una oportunidad pasado el término para apelación que ella había perdido.

Lic. Peñagarícano:

Así lo entendemos respetuosamente, Vuestro Honor, y mi recuerdo más aún, Honorable Juez, es que cuando hice mi oposición, como aquí nos demuestra en esta moción del compañero Correa Suárez de 30 de marzo de 1965, alega algo de fraude y que el accidente había ocurrido distinto al que decía la parte demandante, este abogado se opuso y cuando se percató que los testigos habían mentido al Honorable Juez y se había fabricado un caso, este abogado, a iniciativa propia, acudió a Vuestro Honor y al compañero Correa Suárez con el propósito que Carmen Casillas mostrara que era cierto que el accidente había ocurrido en otro sitio, que no era en la casa, que mis clientes habían mentido y que era un fraude contra ella y este abogado se allanó.

Hon. Juez:

Eso yo creía que se me iba a mostrar en el día de hoy.

Lic. Correa Suárez:

Fíjese, Vuestro Honor, ahora mismo vamos a mostrar, Vuestro Honor, conclusión en ese sentido.

Hon. Juez:

A eso es a lo que voy. Si mi sentencia era errónea, ella podía apelar ante el Tribunal Supremo. Yo lo que quiero decir es que yo no abrí el caso para volverlo a ver de nuevo. Yo no voy a entrar en los méritos del caso, una vez pasé sobre ellos. Abrí el caso para que ella demostrara que el Tribunal había dictado una sentencia a base de una prueba que era fraudulenta. Que el accidente no había acaecido tal como rezaban los demandantes, sino en otro sitio y el compañero me dijo que tenía prueba para

demostrar que no había acaecido el accidente así y yo abrí el caso para darle una oportunidad a ella.

LIC. CORREA SUÁREZ:

Aparentemente, por equivocación, por enfoque, concluyen que, al gritar la nena, la madre corrió—que ha declarado—allí y al verla botando sangre, con un hueso que se le salía, la envolvió en una toalla. Esa madre ha venido y ha dicho a preguntas . . .

HON. JUEZ:

Sí, compañero, esa fue la prueba que se produjo en esa fecha. Si no estaba conforme con esa prueba, pues, entonces, podía llevar el caso en apelación ante el Tribunal Supremo y ahí revisaban si esa determinación que yo he hecho ahí se ajustaba a la prueba practicada y hubieran dicho: 'No se ajusta, que abra el caso de nuevo', pero no abrirlo de nuevo . . .

LIC. PEÑAGARÍCANO:

No no puedo quedarme callado, porque tengo que defender a Vuestro Honor. El Tribunal concluyó que este testigo le dijo al Tribunal que él había visto a su hijita con los huesos por fuera, botando sangre, que no fue ella.

HON. JUEZ:

De la prueba que desfiló aquí, de los hechos, de las notas, fue que se llegó a esa determinación porque yo no me las inventé y de ahí surge.. El quiere decir que cuando está ahí es que alguien lo dijo aquí. Ahora, si no había evidencia suficiente para eso el Tribunal lo diría. Ella tenía que apelar, pero ella no apeló y viene con una moción diciendo que se había cometido fraude y la prueba que tenía ante sí no era cierta y abrí el caso y el único testigo que viene a declarar en contra de esa prueba, que viene a declarar, que dice que ella se cayó en una ventana para afuera, pero fue la primera vez, no la segunda vez.

LIC. CORREA SUÁREZ:

Estamos de acuerdo, pero nosotros queremos traer el informe clínico para demostrar que no había tal sangre.

HON. JUEZ:

Pero vamos a suponer que no la había habido, el hecho cierto fue que la niña se cayó por el hoyo de una tabla y sufrió en un brazo una fractura y fue llevada a la clínica y que había notificación a la Opa y se le había notificado al hermano, se le

había notificado anteriormente y le habían escrito una carta, de lo que me recuerdo.

LIC. PEÑAGARÍCANO:

Ella lo admitió, Vuestro Honor, Carmen Casillas.

LIC. CORREA SUÁREZ:

Dijo que no se le había notificado nada.

LIC. PEÑAGARÍCANO:

Al hermano.

LIC. CORREA SUÁREZ:

A ella no, compañero.

HON. JUEZ:

Lo siento, es ésta toda la prueba que tiene el compañero?

LIC. CORREA SUÁREZ:

Es la única prueba que podía haber presentado.

LIC. PEÑAGARÍCANO:

Sometido, Vuestro Honor.

HON. JUEZ:

La Corte resolverá." (T.E. de Nov. 3, 1965, págs. 37 a 43.)

En 8 de noviembre de 1965, el Tribunal dictó una resolución declarando sin lugar la moción de la codemandada Carmen Casillas Mojica para que se le relevara de los efectos de la sentencia y dejó ésta en toda su fuerza y vigor.

■ La sentencia original dictada por el tribunal de instancia era nula en cuanto a la codemandada recurrente y lo sigue siendo porque (1) se dictó sin jurisdicción sobre la codemandada Carmen Casillas Mojica, y (2) la reapertura del caso, a los fines limitados de oír únicamente la prueba de dicha codemandada, limitada también a la controversia sobre el lugar donde había ocurrido el accidente, le negó su derecho a enfrentarse a la prueba de los demandantes que anteriormente había sido presentada en su ausencia, cuando aún no había comparecido en los autos ni el tribunal había adquirido jurisdicción sobre su persona y le negó también su derecho a presentar toda la prueba que pudiera ofrecer en su defensa,

constituyendo todo ello una privación del debido procedimiento de ley.

■ La expedición de un emplazamiento, y su diligenciamiento conjuntamente a la demanda, así como el cumplimiento con los requisitos exigidos para que se autorice el emplazamiento por edictos, son trámites necesarios para que un tribunal adquiera jurisdicción sobre la persona del demandado cuando se trata de traerlo a la jurisdicción del tribunal por las causas que la ley establece para ello.(1) Los autos en el presente caso revelan que no se diligenció emplazamiento alguno en la persona de la codemandada Carmen Casillas. Sin embargo el tribunal puede adquirir jurisdicción sobre un demandado que no ha sido emplazado o que no conste en los autos prueba del diligenciamiento del emplazamiento servídole porque la admisión o renuncia bajo juramento por el demandado o su comparecencia hace innecesaria la prueba del diligenciamiento del emplazamiento. Regla 4.8 de Procedimiento Civil.

■ En el presente caso no medió admisión o renuncia bajo juramento de la susodicha demandada. El tribunal de instancia resolvió que ella compareció y que en su consecuencia adquirió jurisdicción sobre su persona. La indicada comparecencia consiste en que dicha codemandada estuvo presente en corte el día señalado para el juicio. Su presencia allí se debió, según lo revela el récord, a que había sido citada por el otro codemandado para que produjera un documento.

■ Esa presencia de la codemandada en el salón del tribunal no es una "comparecencia" a los fines señalados en la Regla 4.8 de Procedimiento Civil. La anterior Regla de Procedimiento Civil de 1943 disponía que la admisión o renuncia bajo juramento por el demandado hacía innecesaria la prueba del diligenciamiento del emplazamiento. No incluía, como lo hace la Regla 4.8, su comparecencia. Sin embargo,

---

(1)*Franco* v. *Corte*, 71 D.P.R. 686 (1950).

dijimos en el caso de *Franco* v. *Corte*, supra, a la página 689, que es innecesaria la prueba del diligenciamiento del emplazamiento, para que la corte adquiera jurisdicción sobre el demandado, cuando éste se persona voluntariamente en autos.

■ Lo que dijimos en el caso de *Franco* es el significado correcto del vocablo "comparecencia" usado en la Regla 4.8. Para que la "comparecencia" de un demandado confiera jurisdicción al tribunal es necesario algo más que su presencia personal en el salón de la Corte, especialmente cuando tal presencia es accidental. Debe el demandado realizar algún acto sustancial que le constituya en una parte en el pleito. Véanse, 6 C.J.S.—Appearance 1, 12 y 13; *Andrews* v. *Andrews & Andrews*, 4 F.Supp. 5; *Thornhill* v. *Hargreaves*, 107 N.W. 847; *Smith* v. *Hamahua Mills Co.*, 12 Haw. 245; *Aycock* v. *Miller*, 18 So.2d 335; 3A *Words & Phrases*, pág. 341.

■ Ahora bien, siendo nula por falta de jurisdicción la sentencia dictada contra la codemandada Carmen Casillas Mojica, ésta tenía derecho, al personarse en autos a contestar la demanda, a confrontarse con la prueba de los demandantes y a presentar en su defensa toda la prueba pertinente que tuviere, o sea, que en cuanto a ella respecta debió celebrarse un juicio plenario. Sin embargo, el tribunal de instancia entendió que como había adquirido jurisdicción sobre la susodicha codemandada por su presencia personal en corte, podía relevarla de los efectos de la sentencia pero sujeto a las condiciones que ya conocemos. Esa resolución es errónea y debe revocarse, al igual que la sentencia.

Por los motivos expuestos *se revocará tanto la ameritada resolución como la sentencia en cuanto a la codemandada Carmen Casillas Mojica y se devolverá el caso para la continuación de los procedimientos compatibles con esta decisión.*

El Juez Presidente, Señor Negrón Fernández, y el Juez Asociado, Señor Hernández Matos, no intervinieron.