Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| TIFANNY CARO MARTÍNEZ<br>Apelante<br><br>v.<br><br>CHRISTOPHER JAMES SYKES<br>Apelado | TA2025AP00638 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso Núm. AG2025RF00658<br><br>Sobre: Alimento |

Panel integrado por su presidenta la Jueza Grana Martínez, el Juez Ronda Del Toro, la Jueza Lotti Rodríguez.

*Grana Martínez, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de febrero de 2026.

La apelante Tifanny Caro Martínez solicita que revoquemos la Sentencia en la que el Tribunal de Primera Instancia desestimó la demanda.

I

Los hechos procesales que anteceden que motivaron a la presentación de este recurso:

El 29 de septiembre de 2025, la apelante, señora Tifanny Caro Martínez presentó una petición de custodia y alimentos contra el apelado, señor Christopher James Sykes.[1] El 16 de octubre de 2025, la Lcda. Priscila Martínez Paredes presentó una moción en la que asumió la representación legal del apelado e informó su comparecencia voluntaria y sumisión a la jurisdicción de los tribunales de Puerto Rico.[2] Además, presentó *MOCION EN SOLICITUD DE ORDEN E INFORMATIVA* en la que informó que el 25 de agosto de 2025 el Tribunal del Estado de Carolina del Norte concedió la custodia de emergencia a su cliente. La representación legal del apelado adujo que ese foro ratificó y amplió la orden de

---

[1] Véase Sistema Unificado de Manejo y Administración de Casos (SUMAC) ante el Tribunal de Primera Instancia (TPI), entrada número 1.
[2] Véase SUMAC ante el TPI, entrada número 6.

custodia en una audiencia realizada en el mes de octubre a la que la apelante no asistió. La Lcda. Martínez Paredes argumentó que el Tribunal de Carolina del Norte incluso, autorizó la intervención de las autoridades puertorriqueñas para asegurar la devolución del menor y programar la audiencia final en el año 2026. Por último, informó la disposición del apelado a comparecer mediante videoconferencia a la vista del 28 de octubre. Se anejó al documento una orden del Tribunal de Carolina del Norte del 25 de agosto de 2025.[3]

El 17 de octubre de 2025 el apelado presentó una moción de desestimación por falta de emplazamiento y jurisdicción sobre la materia.[4] Esto a pesar de que un día antes, su representación legal lo había sometido a la jurisdicción de Puerto Rico. En esta última moción, su representación legal alegó que no fue emplazado conforme a derecho. Igualmente adujo que el 27 de agosto de 2025, un tribunal del Estado de Carolina del Norte le concedió la custodia provisional ex parte y de emergencia, debido a la salida de la apelante de la jurisdicción. El apelado pidió:

1. La desestimación de la demanda por falta de jurisdicción sobre su persona porque no fue emplazado conforme a derecho y falta de jurisdicción sobre la materia debido a que existía un procedimiento iniciado en el Estado de Carolina del Norte.
2. El reconocimiento de la orden vigente de custodia del Tribunal de Carolina del Norte, con jurisdicción para adjudicar todo asunto directamente relacionado con el menor.
3. Abstenerse de asumir jurisdicción hasta que el tribunal con jurisdicción primaria dispusiera lo contrario.
4. Dejar sin efecto las mociones presentadas en las entradas 6 y 7 porque el apelado estaba ajeno a esa situación y desconocía que no fue emplazado conforme a derecho.

El Tribunal de Primera Instancia (TPI) concedió quince días a la apelante para que evidenciara el diligenciamiento del emplazamiento al señor James Sykes y que el Tribunal del Estado de Carolina del Norte había declinado ejercer su jurisdicción sobre

---

[3] Véase SUMAC ante el TPI, entrada número 7.
[4] Véase SUMAC ante el TPI, entrada número 8.

la custodia del menor so pena de desestimar la demanda sin perjuicio.[5] La apelante presentó moción en cumplimiento de orden en la que alegó que la solicitud de desestimación era prematura porque no había vencido el término para emplazar. Además, adujo que el apelado se sometió voluntariamente a la jurisdicción. Su representación legal argumentó que la jurisdicción pertenecía al tribunal de Puerto Rico, porque fue donde se otorgó inicialmente la custodia provisional del menor. Según la apelante el 15 de septiembre de 2025, el Tribunal Municipal de Aguada le concedió la custodia provisional del menor en una Orden de Protección Ex Parte expedida en el caso de violencia doméstica OPA 2025-058137. La apelante acompañó dicha orden como evidencia. Su representación legal adujo que el apelado presentó un caso en Carolina del Norte, a sabiendas de la orden de custodia provisional que dictó el Tribunal Municipal de Aguada. La apelante pidió que se declarara no ha lugar la moción de desestimación o, en la alternativa, se mantuvieran vigente los 120 días para emplazar.[6]

El TPI resolvió que los documentos en el expediente evidenciaban que el Tribunal de Carolina del Norte retuvo la jurisdicción sobre las partes y la custodia del menor, en una orden del 1 de octubre de 2025. El foro primario advirtió que el Tribunal de Carolina del Norte otorgó la custodia provisional al padre y que establecería la custodia permanente en el mes de febrero de 2026. Amparado en esos fundamentos, el TPI desestimó sin perjuicio la demanda debido a la falta de emplazamiento y de jurisdicción sobre la materia.[7]

La apelante presentó una moción de reconsideración en la que argumentó que el Tribunal Municipal de Aguadilla asumió la

---

[5] Véase SUMAC ante el TPI, entrada número 10.
[6] Véase SUMAC ante el TPI, entrada número 11.
[7] Véase SUMAC ante el TPI, entrada número 12.

jurisdicción antes que el Tribunal de Carolina del Norte. Su representación legal adujo que los documentos presentados por el apelado son del 4 de agosto de 2025, el mismo día en que la apelante solicitó la orden de protección y se le adjudicó la custodia provisional.[8]

El TPI declaró no ha lugar la moción de reconsideración y advirtió que cualquier determinación local de custodia temporal dictada dentro de una orden de protección se limita a, jurisdicción de emergencia, exclusivamente para proteger al menor y a la parte peticionaria, el foro que finalmente estaría en posición de tomar una determinación final lo es ante una Sala Superior de Familia. Aun si la orden de protección en Puerto Rico fue anterior, su determinación de custodia temporal responde a jurisdicción de emergencia para fines de protección, ello no confiere jurisdicción continua sobre custodia cuando otro estado, Carolina del Norte en este caso, asumió oportunamente jurisdicción y mantiene la jurisdicción del caso.

En cuanto a alimentos, mantuvo la desestimación sin perjuicio. Cualquier solicitud debería canalizarse en el foro con jurisdicción primaria o, en su defecto, presentarse en Puerto Rico con fundamento interestatal adecuado y jurisdicción personal sobre el alimentante.[9]

El apelado compareció sin someterse a la jurisdicción en una *URGENTE MOCION EN SOLICITUD DE ORDEN Y MEDIDAS PROTECTORAS*, en la que alegó que la apelante permanecía en Puerto Rico con el menor y desconocía su paradero. Su representación legal solicitó al tribunal que, ordenara a la apelante comparecer a los procedimientos en Carolina del Norte, cumplir inmediatamente la orden de custodia de ese tribunal y revelar el

---

[8] Véase SUMAC ante el TPI, entrada número 13.
[9] Véase SUMAC ante el TPI, entrada número 14.

lugar donde estaba el menor. Igualmente, pidió autorización para utilizar la orden solicitada ante las autoridades policiacas y advertir a la apelante que su incumplimiento podría constituir un desacato.[10] Además, presentó *Urgente Moción en Solicitud de Orden y Medidas Protectoras* en la que incluyó los documentos del Tribunal de Carolina del Norte, que por error su abogada no presentó previamente.[11]

La apelante se opuso, porque los documentos no cumplieron con el procedimiento de Exequátur establecido en la Regla 55 de Procedimiento Civil, *32 LPRA Ap. V.,* para ser admitidos como evidencia o tomar conocimiento judicial sobre su existencia. Su representación legal solicitó al tribunal que no admitiera la presentación de esos documentos y que declarara no ha lugar las mociones urgentes del apelado.[12]

El TPI denegó la solicitud de orden protectora del apelado sin perjuicio, debido a que éste no era el procedimiento procesal correcto.[13] No obstante, hizo formar parte del expediente los documentos del Tribunal de Carolina de Norte que la abogada del apelado presentó posterior a la sentencia.[14] El TPI determinó que las órdenes acompañadas no tenían fuerza ejecutoria en Puerto Rico, porque no cumplían con el exequátur. Sin embargo, denegó la solicitud de la apelante para excluir los documentos del expediente. El TPI los admitió en el expediente como referencia del proceso pendiente en Carolina del Norte.[15]

La apelante presentó oportunamente este recurso en que alega que:

1) ERRÓ EL TPI AL ACORTAR EL TÉRMINO PARA EMPLAZAR.
2) ERRÓ EL TPI AL NO ADQUIRIR JURISDICCIÓN DEL CASO AUN CUANDO LA PARTE DEMANDADA HABIA

---

[10] Véase SUMAC ante el TPI, entrada número 15.
[11] Véase SUMAC ante el TPI, entrada número 16.
[12] Véase SUMAC ante el TPI, entrada número 17.
[13] Véase SUMAC ante el TPI, entrada número 19.
[14] Véase SUMAC ante el TPI, entrada número 18.
[15] Véase SUMAC ante el TPI, entrada número 20.

COMPARECIDO DE MANERA VOLUNTARIA Y SOMETIDO EXPRESAMENTE A LA JURISDICCIÓN DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO.

3) ERRÓ EL TPI EN DICTAMINAR QUE CUALQUIER DETERMINACIÓN LOCAL DE CUSTODIA TEMPORAL DICTADA DENTRO DE UNA ORDEN DE PROTECCIÓN SE LIMITA A JURISDICCIÓN DE EMERGENCIA EXCLUSIVAMENTE PARA PROTEGER AL MENOR Y A LA PARTE PETICIONARIA, EL FORO QUE FINALMENTE ESTARIA EN POSICIÓN DE TOMAR UNA DETERMINACIÓN FINAL LO ES ANTE UNA SALA SUPERIOR DE FAMILIA AUN SI LA ORDEN DE PROTECCIÓN EN PUERTO RICO FUE ANTERIOR, SU DETERMINACIÓN DE CUSTODIA TEMPORAL RESPONDE A JURISDICCIÓN DE EMERGENCIA PARA FINES DE PROTECCIÓN, ELLO NO CONFIERE JURISDICCIÓN CONTINUADA SOBRE CUSTODIA CUANDO OTRO ESTADO, ASUMIÓ JURISDICCIÓN Y MANTIENE LA DEL CASO.

4) ERRÓ EL TPI DEBIDO A QUE LA ORDEN DE CUSTODIA DEL OTRO ESTADO NO HA SIDO VALIDADA EN PUERTO RICO MEDIANTE EL CORRESPONDIENTE PROCEDIMIENTO DE EXEQUATUR POR LO QUE EL DEMANDADO NO LA PUEDE ENFORZAR.

II

## JURISDICCIÓN SOBRE LA PERSONA

El emplazamiento es la forma de adquirir jurisdicción contra el demandado en un proceso judicial. El tribunal adquiere jurisdicción sobre el demandado, luego de diligenciado el emplazamiento. No obstante, también puede adquirirla cuando el demandado se somete voluntariamente a su jurisdicción. Su comparecencia voluntaria suple la omisión del emplazamiento y lo coloca al alcance del tribunal para que atienda el recurso presentado y resuelva la controversia en sus méritos. *Cancel Rivera v. González Ruiz,* 200 DPR 319, 330-331 (2018).

La sumisión es la comparecencia voluntaria de una parte y la realización de algún acto sustancial que la constituya parte en el pleito. *Qume Caribe Inc. v. Srio. de Hacienda* 153 DPR 700, 711 (2001). El demandado que se somete voluntariamente a la jurisdicción del tribunal, renuncia a plantear la insuficiencia del emplazamiento. *Rodríguez v. Urban Brands,* 167 DPR 509, 524 (2006). La sumisión voluntaria requiere que la parte indebidamente emplazada comparezca sin alegar la falta de jurisdicción sobre su persona y presente otro tipo de alegaciones para fines que no sean

cuestionar la jurisdicción sobre su persona. Los tribunales de Puerto Rico tienen jurisdicción sobre un no domiciliado, cuando existe una sumisión expresa o tácita de su parte. *Shuler v. Shuler,* 157 DPR 707, 719 (2002). Un demandado se somete voluntariamente a la jurisdicción del tribunal, si cumple sus órdenes y presenta documentos pertinentes para dilucidar la demanda en su contra. *Vázquez v. López,* 160 DPR 714, 721 (2003). El acto que implica sumisión al tribunal tiene que ser sustancial. *Claudio v. Casillas Mojica,* 100 DPR 761, 773 (1972). La sumisión voluntaria se materializa mediante actos concretos y específicos.

De otra parte, el emplazamiento debe diligenciarse en el término de ciento veinte días a partir de la presentación de la demanda o de la fecha de expedición del emplazamiento por edicto. 32 LPRA Ap. V R 4.3 (c). El tribunal desestimará y ordenará el archivo sin perjuicio de la demanda, cuando no es diligenciado dentro de ese término. La Regla 68.2 de Procedimiento Civil, 32 LPRA Ap. V concede discreción a los tribunales para acortar los términos. Sin embargo, dicha norma no aplica al término para diligenciar un emplazamiento. Los tribunales no tienen discreción para disminuir el término para emplazar. *Sánchez Ruiz v. Higuera Pérez et al.,* 203 DPR 982, 983 (2020).

PARENTAL KIDNAPPING PREVENTION ACT, 28 USC SEC 1738 A

Full Faith and Credit Given to Child Custody Determinations

La Ley de Prevención de Secuestro Parental ocupa el campo en materia de determinaciones interestatales de custodia y prevalece sobre cualquier legislación estatal. *Cancel Rivera v. González Ruiz, supra.* Su postulado principal es que en ella se ordena a los tribunales a reconocer entera fe y crédito a los decretos de custodia de otros estados o jurisdicciones. No obstante, el decreto de custodia tiene que cumplir con la ley y el foro original tiene que continuar teniendo la jurisdicción sobre la custodia del menor. La ley

contempla cuatro situaciones en las que se reconoce la jurisdicción de un tribunal para atender los asuntos de custodia. El orden de prelación establecido es el siguiente: (1) la residencia del menor, (2) los contactos significativos con el foro, (3) cuando no existe otro estado con jurisdicción o ha declinado ejercerla y (4) situaciones en las que el menor se encuentra en estado de emergencia. El estatuto establece un esquema de preferencia jurisdiccional hacia el estado de residencia del menor. La preferencia se debe a que el foro donde reside el menor es el mejor capacitado para atender los asuntos relacionados a su custodia. El estado de residencia del menor es el lugar donde el menor ha vivido con uno o ambos padres o con su tutor, durante al menos seis meses consecutivos, antes del inicio de los procedimientos de custodia. La ley confiere jurisdicción continua al estado o foro que emitió el decreto original de custodia para que haga valer o revise sus determinaciones originales. El criterio de jurisdicción continua prevalece sobre el de residencia del menor. Un tribunal mantiene la jurisdicción continua, cuando se cumplen los tres requisitos siguientes: (1) emitió un decreto original de custodia compatible con las disposiciones del PKPA, (2) es el foro original y mantiene la jurisdicción conforme a sus propias leyes y, (3) continúa siendo el estado de residencia del menor o al menos de una de las partes. Un estado no puede asumir jurisdicción, si existe un procedimiento de custodia iniciado previamente en otro estado pendiente de resolver. No obstante, por excepción se reconoce la jurisdicción de otro foro para modificar una determinación de custodia, cuando el que la emitió la perdió o declinó ejercerla. *Santiago v. KabuKa,* 166 DPR 526, 535-537 (2005). Los tribunales de Puerto Rico deben reconocer entera fe y crédito a los decretos sobre custodia y pensión alimenticia de otros estados o jurisdicciones, siempre que sean compatibles con la ley y que el foro

original mantenga jurisdicción sobre la materia. *Cancel Rivera v. González Ruiz, supra.*

El Tribunal Supremo discutió en *Collazo Dragoni v. Noceda González,* 198 DPR 476, 482-485 (2017), detalladamente los ocho incisos de la PKPA. El legislador estableció en el inciso a, la norma general de que los tribunales no podrán modificar un dictamen de custodia de otro estado que ha sido dictado de forma compatible con la ley. Los demás estados deberán otorgarles entera fe y crédito a las determinaciones de custodia compatibles con la ley. La definición de estado de residencia está en el inciso b. El estado de residencia es donde el menor ha residido seis meses consecutivos, antes de iniciado el procedimiento de custodia. El inciso c contiene el análisis para determinar, si el dictamen de custodia es compatible con la ley, para que aplique la prohibición de no intervenir establecida en el inciso a. El análisis es el siguiente: (1) si el tribunal que hizo la determinación de custodia tenía jurisdicción bajo las leyes de su estado y, (2) si cumplió con una de las bases jurisdiccionales conforme al orden preferencial siguiente: (a) Es el estado de residencia del menor, (b) adquirió la jurisdicción por contactos significativos con el foro, (c) el menor fue abandonado o se encuentra en estado de emergencia, (d) no existe otro estado con jurisdicción o ha declinado ejercerla y, (e) la jurisdicción es continua.

Según el inciso d, el estado que emitió el decreto original de custodia, conserva jurisdicción continua para hacer valer y revisar su determinación original. La jurisdicción se conserva, si se cumplen los requisitos siguientes: (1) el decreto original de custodia es compatible con las disposiciones del PKPA, (2) el foro judicial mantiene la jurisdicción conforme a sus propias leyes y, (3) continúa siendo el estado de residencia del menor o al menos de una de las partes. La jurisdicción continua prevalece sobre cualquier otra base jurisdiccional. El inciso e establece como requisitos para la validez

de un decreto de custodia, la notificación adecuada a los padres y la oportunidad de ser oídos previo a la determinación. No obstante, como excepción al inciso d, en el inciso f, los tribunales están autorizados a modificar una determinación de custodia emitida originalmente por otro estado si; (1) el estado que pretende modificar el decreto ostenta jurisdicción y, (2) el foro original perdió su jurisdicción para modificar el decreto o renuncio a ella. Por último, en el inciso (g) se previenen los conflictos interjurisdiccionales, porque se prohíbe a un tribunal ejercer jurisdicción, cuando otro ya la ha asumido conforme a la ley. *Collazo Dragoni v. Noceda González, supra, págs. 484-485.*

## EXEQUÁTUR

Las órdenes y sentencias dictadas por los tribunales de un estado de la Unión o de un país extranjero no operan de forma directa o *ex proprio vigore*. Únicamente podrán ejecutarse o hacerse efectivas, si han sido validadas previamente mediante el procedimiento de exequátur. *Colón Vega v. Díaz Lebrón,* 211 DPR 548, 557(2023).

La Regla 55 de Procedimiento Civil, 32 LPRA Ap. V, regula el procedimiento de exequátur mediante el que se convalida y da reconocimiento judicial a una sentencia de otra jurisdicción. Nuestra jurisdicción reconoce dos métodos para dar efectividad a una sentencia extranjera. El primero, es la presentación de una demanda contenciosa contra las otras partes afectadas por la sentencia extranjera. El segundo, es una solicitud ex parte suscrita bajo juramento por las mismas personas que tendrían que ser involucradas en un pleito contencioso. El procedimiento tiene que realizarse de acuerdo con las Reglas de Procedimiento Civil de Puerto Rico. La demanda o reclamación ex parte deberá estar acompañada de una copia certificada de la sentencia cuya convalidación se solicita. La copia tiene que ser legible, estar

completa, cumplir con las reglas de evidencia y adecuadamente traducida al español, si es en otro idioma. Además, es necesario notificar oportunamente a los afectados por la sentencia que se pretende convalidar y a los funcionarios públicos a quienes debe notificarse en los casos particulares contemplados en la regla. La presencia del Procurador de Relaciones de Familia es necesaria cuando se afectan los intereses de menores o incapacitados. El tribunal ordenará la notificación al Secretario de Justicia, cuando entienda que está envuelto el interés público.

Ahora bien, el proceso de exequátur es más sencillo para las sentencias dictadas por los tribunales estatales de Estados Unidos. Únicamente, tienen que cumplir con las cláusulas de entera fe y crédito. Para asegurarse que así lo hacen, los tribunales puertorriqueños solo tienen que darle entera fe y crédito; si las dictó un tribunal con jurisdicción sobre la persona y la materia, se cumplió con el debido proceso de ley, y no hubo fraude. *Colón Vega v. Díaz Lebrón,* supra, págs. 558-559, *Rodríguez Contreras v. ELA,* 183 DPR 505, 516-517 (2011). Los foros judiciales locales no pueden cuestionar sustantivamente los dictámenes provenientes de un estado, territorio o posesión de la Unión Americana, que han cumplido con el procedimiento de exequátur. Esta norma aplica, aunque dichos dictámenes sean contrarios a nuestra política pública. *Colón Vega v. Díaz Lebrón,* supra, pág. 558. Es decir, no se pueden cuestionar sustantivamente siempre y cuando hayan cumplido con los requisitos para darle validez a la cláusula constitucional de entera fe y crédito, antes mencionados.

### III

La apelante alega que el apelado se sometió voluntariamente a su jurisdicción. Sus argumentos son correctos. El TPI se equivocó al no asumir jurisdicción sobre la persona del apelado.

El padre del menor se sometió expresamente a la jurisdicción del tribunal en la *MOCION ASUMIENDO REPRESENTACION LEGAL E INFORMATIVA DE SOLICITUD DE ORDEN E INFORMATIVA*, que su abogada presentó el 16 de octubre de 2025. La Lcda. Priscila Martínez Paredes, hizo constar que el demandado residía en el Estado de Carolina del Norte y comparecía de manera voluntaria ante este Honorable Tribunal, sometiéndose expresamente a la jurisdicción de los tribunales del Estado Libre Asociado de Puerto Rico. Además, presentó *MOCION EN SOLICITUD DE ORDEN E INFORMATIVA* en la que informó que el apelado podía comparecer a la vista del 28 de octubre mediante videoconferencia.[16] El TPI tampoco tenía facultad para acortar el término para emplazar. Los tribunales no tienen discreción para disminuir el término para emplazar. *Sánchez Ruiz v. Higuera Pérez et al., supra.*

Por otro lado, la apelante cuestiona que el TPI se declaró sin jurisdicción sobre la materia, debido a una orden de custodia del tribunal de un estado de la unión americana que no cumplió con el exequátur. La apelante tiene razón. El TPI erró al desestimar la demanda, a base de una orden de custodia de una corte de Carolina de Norte que no fue presentada conforme el procedimiento de exequátur. El foro apelado dio por hecho basado en los documentos en el expediente, que el 1 de octubre de 2025, el Tribunal de Carolina del Norte retuvo la jurisdicción sobre las partes y la custodia del menor. Según el TPI ese foro otorgó la custodia provisional al apelado y determinó que adjudicaría la custodia permanente en el mes de febrero de 2026. El TPI se declaró sin jurisdicción sobre la materia y desestimó la demanda sin perjuicio, valiéndose de esos fundamentos.

---

[16] Véase SUMAC ante el TPI, entrada número 7.

La determinación del TPI apelada es errada, porque nuestro ordenamiento jurídico exige que las órdenes y sentencias extranjeras se validen mediante el procedimiento de exequátur. Posterior a la sentencia, el TPI continúo atendiendo mociones y emitiendo órdenes relacionadas a lo resuelto en dicha sentencia y sobre asuntos que son objeto de la apelación. Su proceder es contrario a lo dispuesto en la Regla 52.3 (a) de Procedimiento Civil, 32 LPRA Ap. V. El TPI estaba obligado a suspender todos los procedimientos relacionados a la sentencia apelada y a las cuestiones comprendidas en este recurso. Posterior a la sentencia apelada, y ya presentado el recurso de apelación, el padre presentó una orden del 1 de octubre de 2025 en la que el Tribunal de Carolina del Norte retuvo la jurisdicción y le adjudicó la custodia del menor. El TPI la admitió, pero reconoció que no podía conceder los remedios solicitados, porque la orden no tenía fuerza de ley, debido a que no cumplía con el procedimiento de exequátur. Dicha orden fue dictada en el mismo caso foráneo, por el que el TPI determinó erróneamente que la jurisdicción pertenecía a Carolina del Norte, se declaró sin jurisdicción sobre la materia y desestimó la demanda. El TPI erró al concluir que la jurisdicción pertenece al Tribunal de Carolina del Norte. La determinación que prevalece sobre la custodia del menor es la emitida por el Tribunal de Primera Instancia el 18 de diciembre de 2025 en el caso OPA-2025-058137. Las determinaciones del foro foráneo no tienen validez legal en nuestra jurisdicción, porque no han sido autenticadas mediante el procedimiento exequátur. El 18 de diciembre de 2025 el foro primario adjudicó la custodia provisional a la madre en una orden que vence el 18 de octubre de 2026. Mientras los documentos emitidos por la Corte de Carolina del Norte no sean presentados conforme el proceso de exequatur, el foro primario no puede hacer una determinación de los criterios para concederle entera fe y crédito. Específicamente, si la Corte de

Carolina del Norte tenía jurisdicción sobre la persona y la materia, si se cumplió con el debido proceso de ley, y si no hubo fraude. Mientras no se cumpla el proceso de exequátur, continua vigente la Orden de Protección emitida en Puerto Rico que establece una custodia provisional de emergencia.

IV

Se revoca la sentencia apelada debido a que el apelado se sometió voluntariamente a la jurisdicción y no podía declinar su jurisdicción sobre la materia, a base de unos documentos de la Corte de Carolina del Norte que no fueron validados conforme al procedimiento de exequátur.

Se ordena a las partes que notifiquen a la Corte de Carolina del Norte la expedición de la Orden de Protección y se concede un término de 60 días para así hacerlo e informar al foro primario si la Corte de Carolina del Norte, conociendo de la orden al amparo de la Ley 54,[17] retendrá la jurisdicción sobre el menor en cuyo caso deberá cumplirse en este foro con el exequátur para validar la determinación de dicho estado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Lotti Rodriguez disiente sin opinión escrita.


                    Lcda. Lilia M. Oquendo Solís
                    Secretaria del Tribunal de Apelaciones

---

[17] Ley 54 de 15 de agosto de 1989 conocida como Ley para la Prevención e Intervención con la Violencia Domestica.